HALLEY et al., Appellants,

v.

OHIO COMPANY, Appellee.

[Cite as *Halley v. Ohio Co.* (1995), 107 Ohio App.3d 518.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68260.

Decided Nov. 27, 1995.

520

*McDonald, Hopkins, Burke & Haber Co., L.P.A., Thomas C. Schrader, Joseph E. McGraw* and *Erica L. Eversman,* for appellants.

*Carlile, Patchen & Murphy, Dennis J. Concilla* and *John E. Haller,* for appellee.

---

NAHRA, Judge.

Plaintiffs H. Myron Halley, M.D., Inc., the H. Myron Halley, M.D., Inc. Defined Benefits Pension Plan and Trust, H. Myron Halley, M.D. and Joan F.

Halley, appeal from the judgment of the Cuyahoga County Court of Common Pleas dismissing their complaint against defendant-appellee, the Ohio Company. For the following reasons, we reverse and remand.

The facts as alleged in the complaint are as follows:

Appellants H. Myron Halley, M.D., and Joan F. Halley are participants and trustees of appellant the H. Myron Halley, M.D., Inc. Defined Benefits Pension Plan and Trust ("Pension Plan"). The Ohio Company, a full service brokerage firm, at all times relevant to this action, assisted the cotrustees (Dr. and Mrs. Halley) with the management, investment, distribution, transfer and control of Pension Plan assets. The Halleys placed Pension Plan assets under the control and management of the Ohio Company.

In December 1992, the Halleys, as cotrustees, terminated the Pension Plan. On December 3, 1992, their agent, National City Bank, in Cleveland, Ohio, instructed the Ohio Company to distribute the Pension Plan's assets (approximately $1 million) on or before December 31, 1992 to an Individual Retirement Account ("IRA") set up by National City Bank for the Halleys. The authorizations for transfer signed by the Halleys specified that transfer of the Pension Plan's assets was to be made on or before December 31, 1992. The Ohio Company transferred all but $27,000 of the Plan's approximately $1 million in assets to the Halleys' IRA before December 31, 1992. Upon learning that the Plan had approximately $27,000 in a separate account, in street name, it transferred this balance to the Halleys' IRA on March 3, 1993.

The appellants' complaint asserted claims for declaratory judgment, breach of contract, breach of fiduciary duty and negligence. Appellants claimed that because of the Ohio Company's failure to transfer the Pension Plan's assets on or before December 31, 1992, appellants were subject to a claim for taxes and penalties which the IRS may assess against them. Appellants demanded a judgment and order of indemnification by the Ohio Company of any and all taxes assessed against appellants by the IRS. The complaint demanded $500,000 in compensatory damages. Appellants had not suffered any monetary damages as of the time of the filing of the complaint.

The Ohio Company sought dismissal of the complaint on two alternative bases: first, that the trial court lacked subject matter jurisdiction of the action because the appellants' state law claims were preempted by the Employee Retirement Income Security Act, Section 1001 et seq., Title 29, U.S.Code ("ERISA"), and second, that the complaint failed to state claims upon which judgment could be granted.

Appellants' first assignment of error states:

"The trial court erred in granting defendant-appellee's motion to dismiss as plaintiffs-appellants' complaint alleged only state law causes of action which are not preempted by the Employee Retirement Income Security Act and were properly before the trial court."

▉ Federal courts have exclusive jurisdiction over all ERISA claims, with certain exceptions that do not apply here. Section 1132(e)(1), Title 29, U.S.Code. ERISA preempts state laws that "relate to any employee benefit plan." Section 1144(a), Title 29, U.S.Code. "Relate to" is interpreted broadly, such that a state-law cause of action is preempted if it has a connection with or reference to an employee benefit plan. See *Pilot Life Ins. Co. v. Dedeaux* (1987), 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39. However, state actions that affect an employee benefit plan only in a remote or peripheral manner are not preempted by ERISA. *Shaw v. Delta Air Lines* (1983), 463 U.S. 85, 100, 103 S.Ct. 2890, 2901, 77 L.Ed.2d 490, 502–503, fn. 21; *Ingersoll–Rand Co. v. McClendon* (1990), 498 U.S. 133, 139–140, 111 S.Ct. 478, 483, 112 L.Ed.2d 474, 483–484.

▉ While there is no simple test for determining whether a state law "relates to" a plan, the courts have established some guiding principles. There are four situations in which ERISA will generally preempt state law:

(1) when laws are specifically designed to affect employee benefits, *Mackey v. Lanier Collection Agency & Serv., Inc.* (1988), 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836;

(2) when state-law and common-law claims are for the recovery of an ERISA plan benefit, see *Tolton v. Am. Biodyne, Inc.* (C.A.6, 1995), 48 F.3d 937, and *Cromwell v. Equicor–Equitable HCA Corp.* (C.A.6, 1991), 944 F.2d 1272;

(3) when ERISA provides a specific remedy, *Perry v. P\*I\*E Nationwide, Inc.* (C.A.6, 1988), 872 F.2d 157, and *Richland Hosp., Inc. v. Ralyon* (1987), 33 Ohio St.3d 87, 516 N.E.2d 1236; and

(4) when state laws and common-law claims provide remedies for misconduct growing out of ERISA plan administration. *Richland Hosp., supra.*

It is not relevant whether the plaintiffs will be left without a remedy. *Cromwell* and *Tolton, supra.*

▉ The following factors indicate that a state law is merely peripheral to a pension plan:

(1) The law involves an area of traditional state regulation;

(2) The state law does not affect relations among the ERISA entities, *i.e.*, the employer, the plan, the plan fiduciaries and/or the beneficiaries; and

(3) The effect of the state law on the plan is incidental in nature. *Firestone Tire & Rubber Co. v. Neusser* (C.A.6, 1987), 810 F.2d 550.

In this case, appellee asserts that ERISA preempts the state-law claims because ERISA provides a cause of action for breach of fiduciary duty. Section 1104, Title 29, U.S.Code. See *Perry v. P\*I\*E, supra.* According to ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." Section 1002(21)(A), Title 29, U.S.Code.

The complaint does not allege that the Ohio Company had *discretion* over the investment, management, distribution, transfer and control of plan assets, but only states that the Ohio Company assisted in these activities. Nor does the complaint state that investment advice was rendered for a fee.

Furthermore, the Ohio Company was performing a ministerial task at the direction of the Halleys when it partially transferred the funds. The Ohio Company was not acting as an ERISA fiduciary when it transferred the funds because the act involved no discretion. See *Zandi–Dulabi v. Pacific Retirement Plans, Inc.* (N.D.Cal.1993), 828 F.Supp. 760. The complaint does not establish that the Ohio Company was acting as a fiduciary, so ERISA does not provide a cause of action for the claims asserted by appellant. See *Schiffli Embroidery Workers Pen. Fund v. Ryan Beck* (D.N.J.1994), 869 F.Supp. 278, 281, 284; *Airparts Co., Inc. v. Custom Benefit Serv. of Austin, Inc.* (C.A.10, 1994), 28 F.3d 1062.

Transferring the funds was not an act in the administration of the ERISA plan. See *id.* at 1066. Appellants made no claim based on any rights under the Pension Plan. The appellants' state-law claims do not even remotely affect the structure, the administration, or the type of benefits provided by the Pension Plan. These state-law claims were not designed to affect employee benefits. This case does not fit into any of the four situations where ERISA generally preempts state law.

The appellants' state-law claims involved areas of traditional state regulation. See *Perry v. P\*I\*E Nationwide, Inc., supra; Airparts Co., supra.* The appellants' claims will not have an effect on the relations among the principal ERISA entities—H. Myron Halley, M.D., Inc., the Pension Plan, H. Myron Halley, M.D. and Joan F. Halley. These ERISA entities are united in their efforts to secure redress from the Ohio Company. As discussed above, the Ohio Company was not

shown to be a fiduciary. The effect of the state-law claims on the Pension Plan is incidental in nature, as the claims do not involve rights under the Plan.

We conclude that the appellants' claims have only a remote or peripheral effect on the employee benefit plan. There is no threat that, by allowing this suit to go forward, conflicting regulations will emerge which will destroy the uniform administrative scheme of ERISA. *Patton v. Bearden* (C.A.6, 1993), 8 F.3d 343. This action was not preempted by ERISA. The trial court erred in dismissing the complaint on the grounds that it lacked subject matter jurisdiction.

Accordingly, this assignment of error is sustained.

Appellants' second assignment of error states:

"The trial court erred in granting defendant-appellee's motion to dismiss for failure to state a claim upon which relief may be granted as a justiciable controversy existed between the parties and plaintiff-appellants are entitled to declaratory judgment."

There are only two reasons for dismissing a complaint for declaratory judgment before the court addresses the merits of the case: (1) there is neither a justiciable issue nor an actual controversy between the parties requiring speedy relief to preserve rights which may otherwise be lost or impaired;  or (2) in accordance with R.C. 2721.07, the declaratory judgment will not terminate the uncertainty or controversy. *Wagner v. Cleveland* (1988), 62 Ohio App.3d 8, 574 N.E.2d 533, citing *Burger Brewing Co. v. Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261.

The justiciable issue here is whether appellee breached its duty to appellants by failing to transfer all of the pension funds by December 31, 1992. The alleged breach of duty by the defendant was a present and not a hypothetical future event. See *Driskill v. Cincinnati* (1940), 66 Ohio App. 372, 20 O.O. 245, 34 N.E.2d 241; *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 65 O.O.2d 179, 303 N.E.2d 871. Appellee subjected appellants to tax liability by failing to transfer all the pension assets within one taxable year. See former Sections 402(a)(5)(A), (D), (E)(i), (E)(v);  402(e)(4), Title 26, U.S.Code (subsequently amended by the Unemployment Compensation Amendments of 1992, P.L. 102–318).

Appellee argues that the controversy is dependent upon whether the IRS conducts an audit and rules unfavorably to appellants, and thus the controversy is based upon speculative future events. The controversy is not so speculative as to deny declaratory relief. According to the apparent meaning of former Section 402(a)(5), Title 26, U.S.Code, appellants incurred a tax liability. The distribution from appellants' pension in 1992 was not a qualified total distribution, because the

appellants' entire balance in the pension was not distributed within one year. Section 402(a)(5)(E)(i). The distribution was not a qualified partial distribution either. Section 402(a)(5)(D). Therefore, appellants could not make a tax-free rollover into the IRA, and the amount distributed from the pension in 1992 was subject to tax. Section 402(a)(5)(D). Appellants are threatened with a tax liability on the face of former Section 402.

According to several IRS private letter rulings, the date of distribution is the date on which the transfer agent received instructions to make the distribution. IRS Private Letter Ruling 9211035, 9311038, 9520052. If these private letter rulings are followed, then the entire balance of the pension was distributed in 1992, and constituted a qualified total distribution. Appellants would not be liable for tax on the 1992 distribution. However, private letter rulings cannot be used as precedent, and apply only to the taxpayer requesting the ruling. See Section 6110(j)(3), Title 26, U.S.Code. There is still a threat of tax liability, despite the private letter rulings.

An analogy can be drawn to cases where a plaintiff threatened with criminal prosecution may obtain a declaratory judgment as to whether the criminal statute is constitutional. See *Pack v. Cleveland* (1982), 1 Ohio St.3d 129, 1 OBR 166, 438 N.E.2d 434; *Peltz v. S. Euclid* (1967), 11 Ohio St.2d 128, 40 O.O.2d 129, 228 N.E.2d 320; *Walter Music & Vending Co., Inc. v. Brown* (Mar. 31, 1982), Ashtabula App. No. 1075, unreported, 1982 WL 5898.

"[I]n the determination of the constitutionality of an ordinance or statute, a court must, of course, indulge in the absolute presumption that such ordinance or statute is in fact strictly enforced. Lack of diligence by those charged with the duty of enforcing such laws must, of course, have no bearing whatsoever on the determination of such laws' validity or nonvalidity." *Id.*, quoting *Wilson v. Cincinnati* (1960), 171 Ohio St. 104, 12 O.O.2d 129, 168 N.E.2d 147.

Thus, even though the plaintiff may never actually be prosecuted, there is a threat of prosecution. Here, even though the IRS may never audit appellants or may decide in favor of appellants, there is a threat of tax liability.

*State ex rel. Bolin v. Ohio Environmental Protection Agency* (1992), 82 Ohio App.3d 410, 612 N.E.2d 498, is distinguishable. In *Bolin*, the plaintiff, Bolin, requested a declaratory judgment against the EPA that Bolin was in compliance with environmental laws. The EPA had never asserted that Bolin was not in compliance. The court held that there was no justiciable controversy because Bolin was not threatened with prosecution under the environmental laws.

Here, it is clear that on the face of the Internal Revenue Code, appellants were threatened with tax liability. There was no indication that Bolin was in violation of statute. Additionally, in this case, appellants are not suing the IRS, but are

suing another party which caused a tax liability. The issue here is whether appellee acted negligently and subjected appellants to tax liability. This negligence issue is based on facts that have already occurred. Appellants do not seek a determination that they were in compliance with the tax law. Thus, the controversy here was based on present, not future speculative events.

Moreover, appellants may no longer have a claim by the time the IRS conducts an audit and assesses a tax liability. A claim against an accountant or investment advisor for negligently causing the client to incur tax liabilities accrues when the negligent act was committed, even though the IRS does not assess a tax liability until later. See *Riedel v. Houser* (1992), 79 Ohio App.3d 546, 607 N.E.2d 894; *Philpott v. Ernst & Whinney* (Nov. 25, 1992), Cuyahoga App. No. 61203, unreported, 1992 WL 357250; *Avery B. Klein & Co. v. Joslyn* (Apr. 8, 1993), Cuyahoga App. No. 61841, unreported, 1993 WL 106948; *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206. In this case, the appellants' cause of action accrued on December 31, 1992, and the four-year statute of limitations began to run on that date. See *id.* Appellants have an immediate need for relief because the statute of limitations may run by the time a tax liability is assessed. See *Burger Brewing Co., supra.*

A real controversy and justiciable issue exist because appellants claims accrued as of the date of the alleged negligent act and there is a need for speedy relief. The claims are not so remote or speculative as to deny declaratory relief. A declaratory judgment as to whether appellee should indemnify appellants for the tax liability would terminate the uncertainty and controversy in this case. Therefore, the trial court was required to issue a declaratory judgment. *Fioresi v. State Farm Mut. Auto Ins. Co.* (1985), 26 Ohio App.3d 203, 26 OBR 424, 499 N.E.2d 5; *Burger Brewing Co., supra.*

Accordingly, this assignment of error is sustained.

Appellants have not pursued on appeal their claim for compensatory damages. Therefore, the decision of the trial court is reversed and this cause is remanded for further proceedings solely on the complaint for declaratory judgment.

*Judgment reversed*
*and cause remanded.*

JAMES D. SWEENEY, P.J., concurs.

PRYATEL, J., dissents.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.

August Pryatel, Judge, dissenting.

With all due respect to the majority in this case, I must dissent on Assignment of Error No. II.

In *Driskill v. Cincinnati* (1940), 66 Ohio App. 372, 20 O.O. 245, 34 N.E.2d 241, the court set forth two criteria which must be present in order for a justiciable issue to exist: (1) the plaintiff must have a right or a duty owing by the defendant; and (2) the denial of the plaintiff's right or duty by the defendant must be a present event rather than a hypothetical future event. See, also, *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 37, 65 O.O.2d 179, 180, 303 N.E.2d 871, 873 (quoting *Aetna Life Ins. Co. v. Haworth* [1937], 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617) ("[In] order to grant declaratory relief, the court must be convinced of the existence of ' * * * a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.' ")

As I see it, the underlying justiciable issue here is not so much whether the Ohio Company breached its duty to appellants by not transferring all the pension funds by December 31, 1992 but whether the Internal Revenue Service would invoke its punitive powers under the facts in this case.

On December 3, 1992, the Halleys, as cotrustees, terminated their pension plan by authorizing the National City Bank (of Cleveland, Ohio) to instruct the Ohio Company to distribute the pension plan assets on or before December 31, 1992 to an Individual Retirement Account ("IRA") with National City Bank.

The Ohio Company transferred all of the funds in the name of Halleys' plan (approximately $1 million) by December 31, 1992. However, upon learning in March that the appellants also listed $27,000 in *street name*, the Ohio Company promptly transferred this balance to the Halleys' IRA (with National City Bank) on March 3, 1993.

There is no claim here that the Ohio Company purposely or intentionally withheld the $27,000 listed in street name.

I do not challenge the statement that the IRS provided letter rulings (to others) that the date of distribution is the date the transfer agent receives instructions to make the distribution and that, if the private rulings are followed, the entire balance of the pension was distributed in 1992, and it qualified as a total distribution to appellants and they would not be liable for tax on the 1992 distribution.

I concede that private letter rulings cannot be used as precedent and only apply to the taxpayer requesting the ruling. See Section 6110(j)(3), Title 26, U.S.Code.

Since this action depends on what the IRS would decide, it seems to me that the IRS should have been made a party to the action.

Nonetheless, I would set aside all this rigmarole and simply have the taxpayer request (1) a letter ruling (2) before the statute of limitations expires.

If the IRS seeks out only intentional and flagrant violations, which (in my judgment) this case is not, then the question of damages or threat of prosecution would disappear. If the ruling reflects a policy that damages are invoked whether violations are intentional or not, then the damages are ascertainable and the gap in petitioners' claim is filled.

I would overrule Assignment of Error No. II.